**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) ISABELLA SNEED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-22-31-R |
| | ) | |
| (1) INDEPENDENT SCHOOL | ) | |
| DISTRICT NO. 16 OF PAYNE COUNTY, | ) | |
| OKLAHOMA, a/k/a STILLWATER PUBLIC | ) | |
| SCHOOL DISTRICT, a/k/a STILLWATER | ) | |
| INDEPENDENT SCHOOL DISTRICT | ) | |
| NUMBER 16, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT MOTION FOR SUMMARY JUDGMENT (DKT. 35)</u>**

Daniel E. Smolen, OBA#19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
SMOLEN & ROYTMAN,
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

Pansy Moore-Shrier,
**Moore-Shrier Law Firm**
624 South Boston, Suite 800
Tulsa, Oklahoma 74119
(918) 592-3001
pansy@mstulsalaw.com

*Attorneys for Plaintiff*

August 1, 2023

# **TABLE OF CONTENTS**

*Page*

Table of Contents     i

Table of Authorities     ii

Introductory Statement     1

Plaintiff's LCvR 56.1(c) Statement     1

    A.     Response to Defendant's "Statement of Undisputed Material Facts"     1

    B.     Other Facts Precluding Summary Judgment     9

Discussion     13

    A.     The School District is *Not* Entitled to Summary Judgment on Isabella's Title IX Claim     13

       1.     The School District Had Actual Notice that Morejon Presented a "Substantial Danger"     14

       2.     There is Sufficient Evidence that the School District was Deliberately Indifferent     18

       3.     The Sexual Harassment Was So Severe and Pervasive That Isabella *Was* Deprived of Access to Educational Benefits Provided by the School     19

    B.     The School District is Not Entitled to Summary Judgment on Plaintiff's Title IX Retaliation Claim     20

    C.     The School District is Not Entitled to Summary Judgment on Isabella's Section 1983 Claim     21

Certificate of Service     23

# <u>TABLE OF AUTHORITIES</u>

| <u>*Case*</u> | <u>*Page(s)*</u> |
|---|---|
| *Baxter v. Palmigiano,* 425 U.S. 308 (1976) | *6* |
| *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397 (1997) | *21* |
| *Bostic v. Smyrna School District,* 418 F.3d 355 (3rd Cir. 2005) | *14* |
| *Crowson v. Washington Cty. Utah,* 983 F.3d 1166 (10th Cir. 2020) | *21* |
| *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ. (Davis),* 526 U.S. 629 (1999) | *20* |
| *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629 (1999) | *14* |
| *DeSpain v. Uphoff,* 264 F.3d 965 (10th Cir. 2001) | *18* |
| *Doe v. Green,* 298 F.Supp.2d 1025 (D.Nev. 2004) | *15* |
| *Doe v. School Administrative Dist. No. 19,* 66. F.Supp. 57 (D.Me. 1999) | *15* |
| *Doe v. Sch. Bd. of Miami-Dade Cnty.,* 403 F. Supp. 3d 1241 (S.D. Fla. 2019).| *14, 15* |
| *ePlus Technology, Inc. v. Aboud,* 313 F.3d 166 (4th Cir. 2002) | *6* |
| *Fennel v. Marion Indep. Sch. Dist.,* 804 F.3d 398 (5th Cir. 2015) | *20* |
| *Fin. Fed. Sav. & Loan Ass'n v. Sav. Inv. Serv. Corp.,* No. CIV-86-176-W, 1986 WL 641, at *4–5 (W.D. Okla. Dec. 11, 1986) | *6* |
| *Folkes v. N.Y. College of Osteopathic Medicine of N.Y. Institute of Tech.,* 214 F.Supp.2d 273 (E.D.N.Y. 2002) | *14* |
| *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1998) | *14* |
| *Gordon v. Ottumwa Cmty. School Dist.,* 115 F.Supp.2d 1077 (S.D. Iowa 2000) | *15* |

*Harry A. v. Duncan,* 351 F. Supp. 2d 1060 (D. Mont. 2005), *aff'd* 234 F. App'x 463 (9th Cir. 2007)      *15*

*Hiatt v. Colo. Seminary,* 858 F.3d 1307 (10th Cir. 2017)      *20*

*Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners,* 962 F.3d 1204 (10th Cir. 2020)      *21*

*Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167 (2005)      *20*

*J.M. v. Hilldale Indep. Sch. Dist. No. I-29 of Muskogee Cnty., Oklahoma,* No. CIV 07-367-JHP, 2008 WL 2944997, at *7–8 (E.D. Okla. July 25, 2008)      *14*

*LiButti v. United States,* 107 F.3d 110 (2d Cir. 1997)      *6*

*Mary M. v. N. Lawrence Cmty. Sch. Corp.,* 131 F.3d 1220& n.4 (7th Cir. 1997)      *15*

*Mitchell v. City & Cnty. of Denver,* 112 F. App'x 662, 671 n.11 (10th Cir. 2004)      *22*

*Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1977)      *21*

*Notari v. Denver Water Dep't,* 971 F.2d 585 (10th Cir. 1992)      *22*

*Olsen v. Layton Hills Mall,* 312 F.3d 1304 (10th Cir. 2002)      *22*

*Pyle v. Woods,* 874 F.3d 1257 (10th Cir. 2017)      *21*

*Roe ex. Rel. Callahan v. Gustine Unified School Dist. (Callahan),* 678 F. Supp. 2d 1008 (E.D. Cal. 2009) (collecting cases)      *20*

*Rife v. Oklahoma Dep't of Pub. Safety,* 854 F.3d 637 (10th Cir. 2017)      *18*

*Rosebud Sioux Tribe v. A & P Steel,* 733 F.2d 509, 521 (8th Cir. 1984)      *7*

*Sav. Inv. Serv. Corp.,* No. CIV-86-176-W, 1986 WL 641, at *4–5 (W.D. Okla. Dec. 11, 1986)      *7*

*SEC v. Suman,* 684 F. Supp. 2d 378 (S.D.N.Y. 2010)      *6*

*Spinka v. H.,* No. 14-cv-583, 2016 WL 1294593, at *3 (S.D. Ill. Mar. 31, 2016)     *15*

*Tafoya v. Salazar,* 516 F.3d 912 (10th Cir. 2008)     *18*

*T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty., Tenn.,* Nos. 3:17-cv-01098, 2018 WL 3348728, at *6 (M.D. Tenn. July 9, 2018)     *15*

*Young v. Austin Indep. Sch. Dist.,* 885 F. Supp. 972 (W.D. Tex. 1995)     *16*

**COMES NOW** Plaintiff, Isabella Sneed ("Ms. Sneed", "Isabella" or "Plaintiff"), and respectfully submits her Response in Opposition to Defendant Independent School District No. 16 of Payne County, Oklahoma, commonly known as "Stillwater Public Schools'" ("School District", "SPS" or "Defendant") Motion for Summary Judgment (Dkt. # 35) as follows:

## Introductory Statement

Alberto Morejon is a former history teacher at Stillwater Junior High School. Morejon was Isabella's eighth grade history teacher. When Isabella was just 14 years old, Morejon began grooming her and then communicating with her through social media. From the summer of 2018 through May 19, 2020, Morejon frequently sent Isabella naked pictures of his erect penis, as well as "imprint" pictures (where Morejon's penis was visibly erect in his boxer briefs). He wrote explicit and vile messages, proposing that they engage in sex acts. Morejon used his position of trust and power to sexually prey on a child.

The School District was aware that Morejon posed a substantial danger to his young female students but took no measures to alleviate the risks. Instead, the School District turned a blind eye to the warning signs, prioritizing its own potential liability over the safety of the students. This is deliberate indifference. The School District's Motion for Summary Judgment (Dkt. #35) should be denied.

## Plaintiff's LCvR56.1(c) Statement

## A. Response to Defendant's "Statement of Undisputed Material Facts"

**1.** Admit.

1

**2.** Plaintiff admits that "Morejon was a history teacher for the School District's junior high school." However, former Principal Fields' "view" of Morejon during the hiring process is immaterial. This is heightened by the fact that former Principal Fields was himself forced to resign amid allegations that he had assaulted a Stillwater Junior High student. *See, e.g.,* Fields Depo. (Ex. 1) at 17:12 − 18:5; Condley Depo. (Ex. 2) at 62:6 − 64:22; Moore Depo. (Ex. 3) at 81:5-21.

**3-4.** Admit.

**5.** Admit. However, Defendant's Statement No. 5 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(1), *infra*.

**6.** Plaintiff admits that Morejon "never texted or communicated with Isabella outside of the school environment" in the fall of 2017. However, Plaintiff disputes the assertion that Isabella "never talked to her mom or any adults at the School District or outside the School District about sitting behind Mr. Morejon's desk…." At a minimum, Isabella told Detective LeJuene that Morejon permitted her to sit and sleep behind his desk in the classroom. *See, e.g.,* LeJuene Depo. (Ex. 4) at 18:18 − 21:21. *See also* Police Report (2020-10505) (Ex. 5) at SPD-000005 (Filed Under Seal).

**7-8.** Admit.

**9.** Admit. However, Defendant's Statement No. 9 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(2), *infra*.

**10.** Admit.

**11.** Admit. However, Defendant's Statement No. 11 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(3), *infra*.

**12.** Admit. However, Defendant's Statement No. 12 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(4), *infra*.

**13-14.** Admit.

**15.** Admit. However, Defendant's Statement No. 15 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(4), *infra*.

**16.** Admit. However, Defendant's Statement No. 16 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(5), *infra*.

**17.** Admit. However, Defendant's Statement No. 17 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(6), *infra*.

**18.** Admit. However, Defendant's Statement No. 18 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(7-9), *infra*.

**19-20.** Admit. However, Defendant's Statement No. 20 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(5-9), *infra*.

**21.** Admit. However, Defendant's Statement No. 21 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(4, 7-9), *infra*.

**22.** Admit.

**23.** Admit. However, Defendant's Statement No. 23 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(4, 7-9), *infra*.

**24.** Admit. However, Defendant's Statement No. 24 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(7-9), *infra*.

**25.** Admit. However, Defendant's Statement No. 25 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(4), *infra*.

**26.** Admit. However, Defendant's Statement No. 26 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(10), *infra.*

**27.** Admit. However, Defendant's Statement No. 27 is incomplete. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(11), *infra.*

**28.** Disputed. At least two other faculty members at the Junior High School, Victor Gonzalez and Trevor Fieldsend, observed that Morejon had what they described as a "harem" of young female students in his classroom. *See, e.g.,* Gonzalez Depo. (Ex. 6) at 26:20 – 30:9; Fieldsend Depo. (Ex. 7) at 93:18-25. A "harem" is commonly defined as the "wives or other female sexual partners of a man, or the part of a house in which they live…."[1] This "harem" of female students in Morejon's classroom was so blatant that "everybody" at the Junior High School "had to have known [about] it." Gonzalez Depo. (Ex. 6) at 66:4-12. Indeed, the "harem" of female students was ***"so obvious*** it would be impossible for the [Junior High School] administration not to be aware that it was going on." Gonzalez Depo. (Ex. 6) at 66:22 – 67:13 (emphasis added).

Mr. Gonzalez recalls "a lot of girls going … even 9th grade girls coming back to the 8th grade hallway to go to" Morejon's "room during breaks, so then they'd be late to their 9th grade class." Gonzalez Depo. (Ex. 6) at 25:23 – 26:13. As Gonzalez testified, the girls just kept coming to Morejon's room; ***"[i]t was weird."*** *Id.* at 28:13-21 (emphasis added). Fieldsend and Gonzalez both believed it was unwise for Morejon to have so many female

---

[1]     https://dictionary.cambridge.org/us/dictionary/english/harem

students in his classroom and that it was "probably going to get him in trouble at some point." *Id.* at 29:19 – 30:3.

In an email, dated April 3, 2019, Mr. Fieldsend referred to Morejon's *"9th grade female entourage…."* Fieldsend Depo. (Ex. 7) at 18:12 – 21:6. This April 3, 2019 email was sent to the entire Junior High Staff, or "anybody that was in the building…." *Id.* Mr. Fieldsend's classroom was across the hall from Morejon's. *Id.* at 21:25 – 22:7.

For reasons that have yet to be explained, on April 29, 2021, Crystal Szymanski, the then-newly appointed Junior High School Principal, wrote a memo regarding Morejon. *See* Szymanski Memo (Ex. 8).[2] The Memo is designated "For Internal SPS Purposes Only". *Id.* In the Memo, Principal Szymanski states that in her first year with the School District and at the Junior High she had "become aware of several patterns of information with regards to Mr. Morejon's interaction with students in prior school years when he was an employee of the district." *Id.* More specifically, Szymanski reported that she had gathered information that led her to believe that it was "somewhat common knowledge by much of the staff at" the Junior High that: **(A)** "Morejon generally had lots of students in his room during his

---

[2]     As noted in Plaintiff's Unopposed Motion to Extend the Scheduling Order, the School District did not produce Principal Szymanski's Memo until July 10, 2023, after the Motion for Summary Judgment was filed, and with limited discovery time remaining. Part of the reason Plaintiff is seeking to extend the schedule is to schedule and take Ms. Szymanski's deposition. In the event the Court determines that Plaintiff has presented insufficient evidence of disputed material facts as part of this Response, Plaintiff asks that the Court deny the Motion for Summary Judgment, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *See* Rule 56(d) Declaration (Ex. 9).

lunch break" and that these students were "generally female or members of the baseball team"; **(B)** "[s]tudents often requested to take Mr. Morejon chocolate milk during his lunch and also other lunch periods (interrupting his 4th hour class)"; **(C)** "[s]tudents would tell supervisory staff that Mr. Morejon loved chocolate milk and that they needed to take him some"; **(D)** "[s]taff believed some of Mr. Morejon's student interactions were ***odd…***"; and **(E)** "some staff members did attempt to tell Mr. Morejon that his interactions were odd and ***could be misinterpreted."*** *Id.* (emphasis added).

Generally, it was a violation of school policy for students to be outside of the cafeteria during lunch. *See, e.g.,* Fieldsend Depo. (Ex. 7) at 39:23 – 40:25; Janloo Depo. (Ex. 10) at 59:3-17; Condley Depo. (Ex. 2) at 31:4 – 32:14. Each time a student was given permission to leave the cafeteria to go to a teacher's classroom, it was required to be "tracked through an administrator". Gonzalez Depo. (Ex. 6) at 42:2 – 43:22.

During his deposition, Morejon declined to answer and invoked his Fifth Amendment right against self-incrimination[3] in response to the following questions:

---

[3]      The Court may draw an adverse inference from Morejon's invocation of the Fifth Amendment. *See, e.g., Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]"); *ePlus Technology, Inc. v. Aboud,* 313 F.3d 166, 179 (4th Cir. 2002) ("In a civil proceeding, a fact finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination."); *SEC v. Suman,* 684 F. Supp. 2d 378, 386 (S.D.N.Y. 2010) (although a motion for summary judgment cannot be granted based on an adverse inference alone, "'[a]n adverse inference may be given significant weight because silence when one would be expected to speak is a powerful persuader.'" (quoting *LiButti v. United States,* 107 F.3d 110, 120 (2d Cir. 1997)). The fact that Morejon is not a named Defendant does not negate, nor lesson, the adverse inference that may be drawn. *See, e.g., Fin. Fed. Sav. & Loan Ass'n v.*

- ■ "[I]t was somewhat common knowledge by much of the staff at Stillwater Junior High School that you generally had lots of female students in your room during the lunch break; isn't that true?"

- ■ "[S]tudents were … being allowed by the supervisory staff to bring you chocolate milk during your lunch hours for the school years of 2016 through 2019 when you were [at] Stillwater Junior High?"

- ■ "Isn't it true, sir, that your fellow faculty members approached you during the school years of 2018 and 2019 and told you that their perception of your behavior with your female students could be viewed as sexual in nature?"

- ■ "Isn't it true, sir, that your fellow staff members, in the years of 2018, 2019, and 2020, attempted to tell you that your interactions with female students could be interpreted as sexual in nature?"

- ■ "Isn't it true, sir, that despite Stillwater Junior High School faculty and administration having knowledge of conduct that could be interpreted as sexual in nature with female students, no one ever disciplined you for that conduct?"

- ■ "Isn't it true, sir, that after it became common knowledge at the Stillwater Junior High School amongst the junior high school staff that your interactions with female students were being interpreted as sexual in nature, that … the school principal brought issues about your conduct to your attention?"

Morejon Depo. (Ex. 11) at 18:18 – 25:18.

    **29.** Plaintiff disputes the assertion that it was "common practice" for a group of female students to be in teacher's classroom during lunch. *See, e.g.,* Pl's LCvR56.1(c) Stat. of Facts (A)(28), *supra.* Plaintiff further disputes the implication that the Junior High staff did not witness anything with Morejon that was out of the ordinary. *Id.*

---

*Sav. Inv. Serv. Corp.,* No. CIV-86-176-W, 1986 WL 641, at *4–5 (W.D. Okla. Dec. 11, 1986) (citing *Rosebud Sioux Tribe v. A & P Steel,* 733 F.2d 509, 521 (8th Cir. 1984)).

**30.** Disputed. Stillwater School Resource Officer ("SRO") "Hooten" co-authored a police report regarding a second alleged victim of Morejon, N.M. *See* Police Report (2020-11636) (Ex. 12) (Filed Under Seal). The police report regarding the second alleged Morejon victim lists Isabella's case (2020-10505) as an "associated case" and makes multiple other references to Isabella's case. *Id.* at SPD-000095, 97, 100, 102 (Filed Under Seal). In the contract between the School District and SPD, it provides that the SRO "shall coordinate and communicate with the principal or the principals' designee of the school to which they are assigned" and that the School District's goal is to "report any crimes that occur on campus…." SRO Contract (7-1-19) (Ex. 13) at SPS 002147 & 2149. More generally, after Morejon was arrested, it was well-known throughout Stillwater High School that Isabella was the victim who reported him to SPD. *See* Sneed Declaration (Ex. 14). Isabella was the only student with the initials I.G.S. in Stillwater Public Schools, which were publicly released in connection with the report on Morejon. *Id.* Finally, Heather Sneed, Isabella's mother, disclosed to numerous Junior High staff members, including Isabella's volleyball coach, FFA instructor and virtual learning administrator, that Isabella was the student who reported Morejon to the police. *See* Heather Declaration (Ex. 19).

**31.** Disputed. The decline in Isabella's school work was a result of the anxiety she suffered from the continual sexual harassment by Morejon. *See* Sneed Declaration (Ex. 14). In addition, the School District did not offer her any services, accommodations, support or counseling. *Id.* Isabella received failing grades for the Spring 2021 semester, but the School District gave her no prior notice on her grades and she had no reason to believe she was failing. *Id.*

**32.** Disputed. After she reported Morejon to the police, Isabella merely filmed other students playing around in the FFA barn. *See* Sneed Declaration (Ex. 14). Yet, Isabella was the only student singled out for punishment by the FFA instructors and banned from keeping her animal in the FFA barn, which effectively removed her from the program. *Id.* SRO Hooten baselessly accused Isabella of doing drugs and threatened to call the police. *Id.* Furthermore, after Isabella reported Morejon to the police, her volleyball coach stopped communicating with her. *See* Sneed Depo. (Ex. 15) at 131:6-21. Prior to the Morejon incident, Isabella and her coach were close. *Id.*

**B.    Other Facts Precluding Summary Judgment**

**1.** In addition to allowing Isabella to sit behind his desk in the classroom, Mr. Morejon would also permit her to sleep behind his desk during class. *See, e.g.,* Sneed Depo. (Ex. 15) at 58:25 – 59:6. According to Stillwater Police Detective Sherae LeJuene, this kind of permissive treatment would raise concerns that Morejon was "grooming" Isabella. *See, e.g.,* LeJuene Depo. (Ex. 4) at 18:18 – 21:21. When asked whether his allowing Isabella to sit and sleep behind his desk was part of the "grooming" process, Morejon declined to answer, invoking his Fifth Amendment right against self-incrimination. *See* Morejon Depo. (Ex. 11) at 29:3 – 30:24.

**2.** At the time that Morejon began communuications of a "sexual nature" with Isabella, she was just fourteen (14) years old. *See, e.g.,* Sneed Depo. (Ex. 15) at 56:2-19; LeJuene Depo. (Ex. 4) at 37:6-8; Police Report (2020-10505) (Ex. 5) at SPD-000005 (Filed Under Seal).

**3.**     As Detective LeJuene testified, Morejon's giving Isabella grades for work she did not turn in was also part of the "grooming" process. *See, e.g.,* LeJuene Depo. (Ex. 4) at 18:18 – 21:21. *See also* Morejon Depo. (Ex. 11) at 29:3 – 30:24. When asked whether giving Isabella grades for work she did not turn in was "in furtherance of developing a sexual relationship with" her, Morejon declined to answer, invoking his Fifth Amendment right against self-incrimination. *See* Morejon Depo. (Ex. 11) at 29:3 – 30:24.

**4.**     Morejon told Isabella to keep his inappropriate sexual communications with her a secret. *See, e.g.,* Sneed Depo. (Ex. 15) at 60:6-17. And when Isabella went to Morejon's classroom he would tell her to delete their conversations from her phone because he could get in a lot of trouble. *See* Sneed Declaration (Ex. 14); Police Report (2020-10505) (Ex. 5) at SPD-000006 (Filed Under Seal). At lunch or after school Morejon would ask to see Isabella's cell phone to ensure she deleted their conversation. *Id.* If she had not deleted it from her cell phone, then Morejon would delete it. *Id.*

**5.**     In addition to being around Morejon at lunch and after school during her ninth-grade year, Morejon would also "[o]ccasionally … call [Isabella] into his room" during his "planning period…." Sneed Depo. (Ex. 15) at 72:1-12. Furthermore, because Isabella's lunch hour was different than the eighth graders, when she went to visit Morejon during lunch, it was when he was teaching other students. *Id.* at 72:24 – 73:8.

**6.**     When Morejon would touch Isabella's legs during her ninth-grade year, she was sitting on the floor behind the desk in his classroom. *See* Sneed Depo. (Ex. 15) at 76:15 – 78:5. Morejon would pat, squeeze and rub Isabella's legs. *Id.*

**7.** From the summer of 2018 through May 19, 2020, Morejon frequently sent Isabella naked pictures of his erect penis, through Instagram direct messaging, as well as "imprint" pictures (where Morejon's penis was visibly erect in his boxer briefs). *See* Sneed Declaration (Ex. 14); Police Report (2020-10505) (Ex. 5) at SPD-000006 (Filed Under Seal). Morejon sent Isabella so many pictures of himself in his underwear that Isabella was able to specifically recall -- for the SPD investigators -- that he wore American Eagle brand boxer briefs. *See* Sneed Declaration (Ex. 14); Police Report (2020-10505) (Ex. 5) at SPD-000006 (Filed Under Seal).

**8.** Morejon and Isabella would message each other almost every day. *See* Sneed Declaration (Ex. 14); Police Report (2020-10505) (Ex. 5) at SPD-000006 (Filed Under Seal). "The conversation[s] always went straight to sex." *Id.*

**9.** Morejon and Isabella would sometimes message each other -- through Instagram instant messaging -- until 4:00 AM and then she would have to get up at 7:00 AM to go to school. *See* Sneed Declaration (Ex. 14); Police Report (2020-10505) (Ex. 5) at SPD-000006 (Filed Under Seal).

**10.** As part of the SPD's investigation into Morejon's sexual abuse of Isabella, on May 15 and 19, 2020, Detective LeJuene (texting as if she was Isabella) received instant messages from Morejon on Isabella's Instagram account. *See, e.g.,* LeJuene Depo. (Ex. 4) at 28:11 − 31:17, 32:14 − 35:2; Police Report (2020-10505) (Ex. 5) at SPD-000007-12 (Filed Under Seal). Some of the lewd messages that Morejon sent to Isabella's Instagram account -- on May 15 and 19, 2020 -- include: **(A)** "[y]ou're a virgin though, you ain't even ready"; **(B)** a reference to Isabella "suck[ing] his d***" if they were to meet in person; and **(C)**

"[a]re you like about to suck someone's d*** and you want to practice first?" LeJuene Depo. (Ex. 4) at 32:3-13, 36:1 – 37:5; Police Report (2020-10505) (Ex. 5) at SPD-000010-12 (Filed Under Seal); Instant Messages (Ex. 16) at SPD-000041, 49, 53, 55 and 59 (Filed Under Seal). Morejon also sent a photo of him touching his penis over his underwear. *See* LeJuene Depo. (Ex. 4) at 38:14 – 39:19. In perhaps the most vile of the messages, Morejon proposed finishing a sex act in Isabella's mouth. *See* Instant Messages (Ex. 16) at SPD-000059 (Filed Under Seal). In another of the messages, Morejon identified an additional female student, A.B., whom Detective LeJuene believes to be a victim. *See, e.g.,* LeJuene Depo. (Ex. 4) at 37:9-25; 42:2-22; Instant Messages (Ex. 16) at SPD-000051 (Filed Under Seal).

**11.** After allowing Morejon to resign, rather than terminating him, the School District *ceased any formal investigation* into his sexual misconduct, even to find out if there were other student victims. *See, e.g.,* Moore Depo. (Ex. 3) at 41:3 – 42:13, 44:20 – 45:12, 49:19 – 51:21, 53:20 – 55:11, 126:19-25; Morejon Resignation Letter (Ex. 17). While the Superintendent at the time, Marc Moore, admits that the School District would want to know if there were other victims and that "[p]eople can't put their head in the sand", he terminated the investigation after Morejon resigned. *See, e.g.,* Moore Depo. (Ex. 3) at 130:1 – 135:2. Of course, there *is* evidence of other victims, including evidence that another female student was raped by Morejon. *See, e.g.,* Gordon Depo. (Ex. 18) at 62:20 – 66:6; LeJuene Depo. (Ex. 4) at 28:3-7, 37:9 – 38:7, 41:10 – 42:25, 45:22 – 48:23; Morejon Depo. (Ex. 11) at 10:1-12 (Redacted).

**12.** The School District had no policy prohibiting or even limiting direct or private communications between faculty and students via social media. *See, e.g.,* Janloo Depo. (Ex. 10) at 63:12 − 64:3; Gonzalez Depo. (Ex. 6) at 45:21 − 46:5.

**13.** The School District keeps "secret files" on employees that are not part of the official personnel file. *See, e.g.,* Gonzalez Depo. (Ex. 6) at 55:25 − 56:17, 58:18 − 59:11, 61:12 − 62:8. Former Superintendent Moore testified that he kept separate investigative files on his desktop. *See* Moore Depo. (Ex. 3) at 83:20 − 85:23. These investigative files were exclusively accessible to former Superintendent Moore. *Id.* at 91:6-13. And it is possible that former Superintendent Moore kept such a file on Morejon. *Id.* at 89:16 − 91:5. Former Superintendent Moore does not know what, if anything, the School District did with the investigative files on his desktop after he resigned. *Id.* at 92:9-19.

**14.** Oklahoma law provides that "[e]very school employee having reason to believe that a student under the age of 18 years is a victim of abuse or neglect shall report the matter immediately to the Department of Human Services and local law enforcement." 10A Okla. Stat. § 1-2-101(B)(2)(a). Former Superintendent Moore is familiar with this requirement of law. *See* Moore Depo. (Ex. 3) at 110:20 − 116:9. Nonetheless, former Superintendent Moore did not report the alleged abuse of Ms. Sneed to DHS. *Id.* And former Superintendent Moore has no information as to whether anyone else from the School District reported the alleged abuse of Ms. Sneed to DHS. *Id.*

## **Discussion**

### A.     The School District is *Not* Entitled to Summary Judgment on Isabella's Title IX Claim

"'[S]exual harassment' is 'discrimination' in the school context under Title IX...."
*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). *See also Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d 1241, 1257 (S.D. Fla. 2019). Pursuant to Title IX, liability may be imposed on an educational institution -- such as the School District -- for an individual's sexual harassment of a student if a school official has actual notice of the misconduct and acts with deliberate indifference in failing to respond to the situation. *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998). Applying this standard, Plaintiff has presented adequate evidence to survive summary judgment on her Title IX sexual harassment claim.

1. **The School District Had Actual Notice that Morejon Presented a "Substantial Danger"**

The School District argues that "the undisputed material facts indicate that the School District had no notice regarding Mr. Morejon's relationship with Isabella" and that there is no evidence that the "School District [was] on notice that Mr. Morejon was sending sexually explicit messages to a student." Dkt. #35 at 10-11. But the actual notice standard is not this strict. Plaintiff need not come forward with evidence that the School District has specific knowledge concerning Morejon's harassment of her or that he was sending explicit texts to other students. Rather, "[i]n the context of Title IX claims, courts universally recognize that 'actual notice' exists where a school has information indicating a ***'substantial danger'*** to students." *J.M. v. Hilldale Indep. Sch. Dist. No. I-29 of Muskogee Cnty., Oklahoma*, No. CIV 07-367-JHP, 2008 WL 2944997, at *7–8 (E.D. Okla. July 25, 2008) (citing *Bostic v. Smyrna School District*, 418 F.3d 355, 360-61 (3rd Cir. 2005); *Folkes v. N.Y. College of Osteopathic Medicine of N.Y. Institute of Tech.*, 214 F.Supp.2d 273, 284-85

(E.D.N.Y. 2002)). The actual notice standard "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. At some point . . . a supervisor school official knows . . . that a school employee is a substantial risk to sexually abuse children. . . ." *Gordon v. Ottumwa Cmty. School Dist.*, 115 F.Supp.2d 1077, 1082 (S.D. Iowa 2000). *See also Doe v. Green*, 298 F.Supp.2d 1025, 1034 (D.Nev. 2004); *Doe v. School Administrative Dist. No. 19*, 66. F.Supp. 57, 63 (D.Me. 1999).

Furthermore, evidence of a Title IX defendant's "willful blindness" can satisfy the "actual knowledge" element. *See, e.g., Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d 1241, 1259 (S.D. Fla. 2019); *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1225 & n.4 (7th Cir. 1997) (where principal had been informed that cafeteria worker and student were planning to skip school/work together the day before they did and had heard the worker and student had been on a "date," but failed to act on that information, there was sufficient evidence that he had knowledge of sexual harassment); *T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, Nos. 3:17-cv-01098, 2018 WL 3348728, at *6 (M.D. Tenn. July 9, 2018) ("A school cannot turn a blind eye to student-to-student behavior or conduct sub-par investigations and claim that the harassment was unknown."); *Spinka v. H.*, No. 14-cv-583, 2016 WL 1294593, at *3 (S.D. Ill. Mar. 31, 2016) (noting that "school administrators certainly cannot escape liability through willful blindness"). A "willful blindness standard would be more than mere negligence and would be tantamount to actual notice." *Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d at 1259. "This outcome is also consistent with the 'deliberate indifference' standard under § 1983." *Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d at 1259 (citing *Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1074 (D.

Mont. 2005), *aff'd* 234 F. App'x 463 (9th Cir. 2007); *Young v. Austin Indep. Sch. Dist.*, 885 F. Supp. 972, 976–77 (W.D. Tex. 1995).

Here, reading the evidence in the light most favorable to Plaintiff, there is ample evidence that the School District was aware that Morejon posed a substantial danger of sexual harassment of female students, and the School District turned a blind eye to that information by failing to investigate or further inquire. To wit: **(1)** other teachers observed that Morejon had what they described as a "harem" of young female students in his classroom; **(2)** this "harem" of female students was ***"so obvious*** it would be impossible for the [Junior High School] administration not to be aware that it was going on"; **(3)** one teacher, Mr. Gonzalez, testified that the girls just kept coming to Morejon's room; ***"[i]t was weird."***; **(4)** both Mr. Gonzalez, and another teacher, Mr. Fieldsend, believed it was unwise for Morejon to have so many female students in his classroom and that it was "probably going to get him in trouble at some point."; **(5)** in an email, dated April 3, 2019, that was sent to the entire Junior High School staff, Mr. Fieldsend referred to Morejon's *"9th grade female entourage…."*; and **(6)** Principal Szymanski reported that it was "somewhat common knowledge by much of the staff at" the Junior High that: **a.** "Morejon generally had lots of students in his room during his lunch break" and that these students were "generally female or members of the baseball team"; **b.** "[s]tudents often requested to take Mr. Morejon chocolate milk during his lunch and also other lunch periods (interrupting his 4th hour class)"; **c.** "[s]tudents would tell supervisory staff that Mr. Morejon loved chocolate milk and that they needed to take him some"; **d.** "[s]taff believed some of Mr. Morejon's student interactions were ***odd…***"; and **e.** "some staff members did attempt to

tell Mr. Morejon that his interactions were odd and ***could be misinterpreted.***" Pl's LCvR56.1(c) Stat. of Facts (A)(28), *supra* (emphasis added).

In addition, the girls consistently going to Morejon's room during lunch should have raised red flags as it was a violation of school policy for students to be outside of the cafeteria during lunch. *See* Pl's LCvR56.1(c) Stat. of Facts (A)(28). Moreover, the Court may draw an adverse inference from Morejon's repeated invocation of the Fifth Amendment during his deposition. *See* f.n. 3, *supra*. Notably, Morejon declined to answer and invoked his Fifth Amendment right against self-incrimination when asked: "[i]sn't it true, sir, that your fellow staff members, in the years of 2018, 2019, and 2020, attempted to tell you that your interactions with female students could be interpreted as sexual in nature?"; and "[i]sn't it true, sir, that after it became common knowledge at the Stillwater Junior High School amongst the junior high school staff that your interactions with female students were being interpreted as sexual in nature, that … the school principal brought issues about your conduct to your attention?" *Id.*

Additionally, Morejon openly allowed Isabella to sit and sleep behind his desk during class. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(1). According to Detective LeJuene, this kind of permissive treatment would raise concerns that Morejon was "grooming" Isabella. *Id.*

As former Superintendent Moore admits, "[p]eople can't put their head in the sand…." Moore Depo. (Ex. 3) at 130:1 – 135:2. But that is precisely what the School District did here. Reading all of the above-summarized evidence in the light most favorable to Plaintiff, she has come forward with sufficient evidence of the School District's actual

knowledge that Morejon presented a substantial danger of sexual harassment to the female students.

## 2. There is Sufficient Evidence that the School District was Deliberately Indifferent

As the School District concedes in its Motion for Summary Judgment, "Deliberate indifference is a well-known concept that has been defined in the context of claims under Section 1983." Dkt. #35 at 12.

In the Section 1983 context, a civil rights defendant is deliberately indifferent where she "has knowledge of a substantial risk of serious harm. . . [and] fails to take reasonable steps to alleviate that risk." *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008). "Because it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence." *DeSpain v. Uphoff,* 264 F.3d 965, 975 (10th Cir. 2001). For instance, "the existence of an obvious risk to health or safety may indicate awareness of the risk." *Rife v. Oklahoma Dep't of Pub. Safety,* 854 F.3d 637, 647 (10th Cir. 2017). The evidence satisfies the standard as applied in this Title IX case.

In the Motion, the School District raises a strawman argument "that the School District did not have actual knowledge of Morejon's misconduct." Dkt. #35 at 13. Again, this is not the standard. As discussed in the previous subsection, the School District had knowledge that Morejon posed a substantial *danger or risk* of sexual harassment to the female students. At a minimum, the evidence tends to show that the risks presented by Morejon

were "obvious." This is all that is required. Further, the School District disregarded the risks by taking no action to even investigate Morejon. This is "willful blindness".

Defendant asserts that "the School District was never made aware of Isabella's identity" and "[n]either [Isabella] nor anyone on her behalf filed a complaint with the School District after Mr. Morejon's arrest." Dkt. #35 at 13. First, there is abundant evidence that the School District knew Isabella was the victim who reported Morejon to the police. *See* Pl's LCvR56.1(c) Stat. of Facts (A)(30). <u>Second</u>, the School District admittedly did not discipline Morejon -- but permitted him to resign -- and *ceased any formal investigation* into his sexual misconduct, even to find out if there were other student victims. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(11). Of course, there *is* evidence of other victims, including evidence that another female student who was raped by Morejon. *Id.* <u>Third</u>, in violation of Oklahoma law, the School District failed to notify DHS of Morejon's abuse of a minor. *See* Pl's LCvR56.1(c) Stat. of Facts (B)(14). The School District showed utter disregard for the well-being of its students by taking no discernable action whatsoever to investigate, report or otherwise address Morejon's sexual abuse of female students. In sum, there is ample evidence of deliberate indifference.

### 3. The Sexual Harassment Was So Severe and Pervasive That Isabella *Was* Deprived of Access to Educational Benefits Provided by the School

There is no doubt that Morejon's sexual harassment of Isabella was severe and pervasive. *See, e.g.,* Pl's LCvR56.1(c) Stat. of Facts (B)(7-10). In fact, it the harassment of Isabella, beginning when she was just 14 years old, was vile and depraved. *Id.*

This severe and pervasive harassment also effectively deprived Isabella of educational opportunities and benefits. A deprivation can be found if there is a "concrete, negative effect" on the plaintiff's ability to receive an education. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ. (Davis)*, 526 U.S. 629, 654 (1999). Examples of a negative impact on access may include dropping grades and treatment for anxiety disorders. *See, e.g., Roe ex. Rel. Callahan v. Gustine Unified School Dist. (Callahan)*, 678 F. Supp. 2d 1008, 1020 (E.D. Cal. 2009) (collecting cases); *Fennel v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (plaintiff suffered from anxiety, required alternative study arrangements, and was ultimately withdrawn from school and moved to another district).

Here, Isabella testified that she has seen five (5) to seven (7) different counselors for treatment of mental health issues associated the harassment by Morejon. *See* Sneed Depo. (Ex. 15) at 134:1 – 135:16. Also, the anxiety caused by the harassment negatively impacted Isabella's schoolwork and grades. *See* Sneed Declaration (Ex. 14). Simply put, Plaintiff has presented sufficient evidence that the severe and pervasive harassment also effectively deprived Isabella of educational opportunities and benefits.

## B. The School District is Not Entitled to Summary Judgment on Plaintiff's Title IX Retaliation Claim

Title IX "prohibits retaliation against individuals because they have complained of sex discrimination." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005)). With respect to Isabella's retaliation claim, the School District only argues that "because neither herself, nor anyone on her behalf, reported to the School District that she was Mr. Morejon's victim." Dkt. #35

at 16. But Isabella has put forth evidence that she complained to the local police that Morejon sexually harassed her (a protected Title IX activity) and that the School District knew she complained about Morejon's sexual harassment of her. *See* Pl's LCvR56.1(c) Stat. of Facts (A)(30) & (B)(10), *supra.* The School District has provided the Court with no basis to dismiss Isabella's retaliation claim.

## C. The School District is Not Entitled to Summary Judgment on Isabella's Section 1983 Claim

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1977) and subsequent cases, the Supreme Court has consistently "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

Policies or customs meeting the standard include "'a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners, 962* F.3d 1204, 1239–40 (10th Cir. 2020) (quoting *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017). "[W]here the county's policy, ***or lack of policies***, evinces deliberate indifference, the county can be liable even in the absence of individual liability by any county actor." *Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1185 (10th Cir. 2020).

Plaintiff has submitted evidence that the School District had no policy prohibiting or even limiting direct or private communications between faculty and students via social media. The evidence also shows that the School District has a practice of failing to investigate and report sexual misconduct, and keeping "secret files" concealing the results of the limited investigations that are conducted. *See* Stat. of Facts Pl's LCvR56.1(c) Stat. of Facts (B)(11-13), *supra*. In other words, the School District has policy and practice of protecting itself from liability over protecting students from sexual misconduct. And it was in this environment, and under these policies and practices, that Morejon felt free to sexual harass Isabella.

Moreover, because Plaintiff's Section 1983 claim against the School District is based on *Monell*, she need not prove that the School District directly discriminated against her. Instead, courts will not ordinarily hold a municipality liable without proof of an "underlying constitutional violation **by [one] of its officers.**" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317−18 (10th Cir. 2002) (emphasis added). So, to establish an "underlying violation", Plaintiff must show that *Morejon* violated her constitutional rights. It is well established that sexual harassment may be actionable under § 1983 and may brought under the Fourteenth Amendment. *See Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 671 n.11 (10th Cir. 2004); *Notari v. Denver Water Dep't*, 971 F.2d 585, 587 (10th Cir. 1992). Here, the evidence would establish that Morejon's sexual harassment of Isabella violated her right to equal protection of the laws, and was also "conscience shocking" as required to make out a substantive due process claim. Summary judgment on the Section 1983 claim is not warranted.

WHEREFORE, premises considered, the School District's Motion for Summary Judgment (Dkt. #35) should be denied.

Respectfully submitted,
**SMOLEN & ROYTMAN**

/s/ Robert M. Blakemore
Robert M. Blakemore, OBA #18656
Daniel E. Smolen, OBA #19943
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667 P
(918) 585-2669 F
danielsmolen@ssrok.com
bobblakemore@ssrok.com

-and-

Pansy Moore-Shrier,
**MOORE-SHRIER LAW FIRM**
624 South Boston, Suite 800
Tulsa, Oklahoma 74119
(918) 592-3001
pansy@mstulsalaw.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

/s/Robert M. Blakemore